WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Tomas Alfredo Pena,<br><br>　　　　　　Defendant. | No. CR 20-01909-TUC-JCH(EJM)<br><br>**REPORT AND RECOMMENDATION** |

　　　　Pending before the Court is a Petition to Revoke Probation of the defendant Tomas Alfredo Pena. (Doc. 65.)  On November 23, 2021, the defendant was sentenced to four years of probation for Possession with the Intent to Distribute Methamphetamine.  His term of probation began on the day of his sentencing.  The petition to revoke probation alleges that the defendant violated Standard Condition #5.  That condition provides that the defendant: must live at a place approved by his probation officer; notify the probation officer 10 days prior to changing residences; and if prior notification of a change in residence is not possible due to unanticipated circumstances, notify the probation officer within 3 days of becoming aware of a change or expected change of residence.  The defendant has denied the allegation.

**I.　　FACTS DEVELOPED AT THE EVIDENTIARY HEARING**

　　　　An evidentiary hearing on the petition was held on February 3, 2025.  (Hrg. Tr. 2/3/2025 (Doc. 77) at 3.)  Probation Officer Daniel Moreno and the defendant testified. Their testimony is set forth below.

### A. Probation Officer Daniel Moreno

#### 1. Direct Examination

Daniel Moreno has been a Probation Officer with the United States Probation Department for the District of Arizona for 25 years. (*Id.* at 4.) His duties include supervising individuals who are sentenced to probation or a term of supervised release in Federal Court. (*Id.* at 4-5.) The defendant was sentenced to a 4-year term of probation; his termination date is November 22, 2025. (*Id.*)

Officer Moreno was assigned to supervise the defendant. (*Id*. at 5.) Officer Moreno met with the defendant in person within the first couple of weeks after his sentencing to review the conditions of probation. (Hrg. Tr. 2/3/25 (Doc. 77) at 6.) Specifically, Officer Moreno reviewed the conditions of probation set forth in the Judgment and Commitment and made a check mark by each condition after confirming that the defendant understood the condition. (*Id*.) Once all the conditions were reviewed and Officer Moreno ensured that the defendant understood the conditions, he had the defendant acknowledge those things by signing the bottom of the J&C. (*Id*. at 6-7.)

The defendant did well on probation for over two years. (*Id*. at 7.) In fact, in December 2023, Officer Moreno and the defendant had been discussing the possibility of terminating his supervision early. (*Id*.) To qualify for early termination of supervision, a defendant must be in full compliance with his conditions, such as having stable housing, employment and remaining sober. (Hrg. Tr. 2/3/25 (Doc. 77) at 7-8.) Additionally, the assigned prosecutor is contacted to see if there is an objection to early termination. (*Id*. at 8.) If the prosecutor does not object, a final records check is done and the probation officer prepares a brief memorandum to the court for its approval. (*Id*.) If the court approves the early termination request, a document is generated by the court and Officer Moreno would distribute that document to the defendant to let him know that he is no longer on supervision. (*Id*.)

Around the time of the discussion about early termination of probation, the defendant moved to Phoenix to live with his sister but did not notify Officer Moreno. (*Id*.)

Officer Moreno decided to allow the move because it benefitted the defendant. (Hrg. Tr. 2/3/25 (Doc. 77) at 8.) Officer Moreno told the defendant that he needed to do a home assessment and verify the defendant's employment, and then early termination could be pursued. (*Id*.) During this discussion, Officer Moreno did not tell the defendant that he was done with probation or that the early termination paperwork had been submitted to the court. (*Id*. at 9.) Officer Moreno later did a virtual home inspection and found that the sister's residence was appropriate. (*Id*. at 11.)

Officer Moreno and the defendant did not have contact for several months. (*Id*. at 11.) In June 2024, Officer Moreno was unable to get in touch with the defendant. (Hrg. Tr. 2/3/25 (Doc. 77) at 11.) Officer Moreno tried the various phone numbers that he had for the defendant and messaged him on Facebook. (*Id.* at 9-10.) Officer Moreno got in touch with the defendant's sister and asked her to tell the defendant to contact him. (*Id*. at 10.) Officer Moreno and the defendant's sister had numerous conversations over a 5 or 6 week period. (*Id*.) During one conversation, the sister advised Officer Moreno that she had contact with the defendant because he was still receiving mail at her house and would stop by once a week to collect his mail. (*Id*. at 10-11.) The sister told the defendant that his probation officer was looking for him. (Hrg. Tr. 2/3/25 (Doc. 77) at 11.) The defendant never contacted Officer Moreno. (*Id*.)

2. Cross-Examination

Officer Moreno supervised the defendant during his entire period of supervision. (*Id*. at 12.) The defendant did well on supervision for over two years; when things happened in his life that were challenging – *e.g*., relational issues, law enforcement contact – he kept Officer Moreno informed and they continued to work together. (*Id*.) The defendant was employed during his term of supervision; he did not test positive for illegal drugs; and he checked in with Officer Moreno more frequently than required. (*Id*. at 13.)

Because the home assessment had been done, Officer Moreno told the defendant that for the early termination to be initiated a records check needed to be done and proof of employment was needed. (Hrg. Tr. 2/3/25 (Doc. 77) at 14.) Again, the home assessment

had already been completed. (*Id*.) At the time of the discussion about early termination, the defendant did not have to check-in with Officer Moreno periodically. (*Id*. at 16.)

In about June 2024, Officer Moreno began speaking with the defendant's sister on the phone and by text message. (*Id*. at 17.) The sister told Officer Moreno that she told the defendant that his probation officer was trying to get in touch with him. (*Id*.)

### 3. Re-Direct Examination:

Officer Moreno did not give the defendant permission to move from his sister's residence. (*Id*. at 19.) The defendant never contacted Officer Moreno to advise that he was moving or that he had moved. ((Hrg. Tr. 2/3/25 (Doc. 77) at 19.)

### B. Tomas Alfredo Pena

### 1. Direct Examination:

Defendant Pena began his probation in late November 2021. (*Id*. at 21.) He complied with conditions including checking in with his probation officer, providing proof of employment, and remaining sober.. (*Id*. at 21-22.)

He initially was living in Tucson but moved to the Phoenix area to work at a restaurant. (*Id*. at 22-23.) He "wasn't having a good time in Tucson" so he asked his probation officer if it would be okay if he lived with his sister in Phoenix. (*Id*. at 23.) He provided his probation officer with proof of employment at the restaurant in Scottsdale and the probation officer completed the virtual walkthrough of his sister's house. (Hrg. Tr. 2/3/25 (Doc. 77) at 23.)

In late December 2023 or early January 2024, Officer Moreno told him that he was in the process of getting early termination completed and that it would take no more than two weeks and then he would be off probation. (*Id*. at 23-24.) Officer Moreno did not tell him that he needed to check in with him. (*Id*. at 24.) Officer Moreno never mentioned a records check. (*Id*.)

When Pena moved from his sister's house in June or July 2024, he thought he was off probation. (*Id*. at 24.) He "never got a letter or anything" stating that he was off probation; he figured that he was off probation because Officer Moreno had not reached

out to him for six months. (Hrg. Tr. 2/3/25 (Doc. 77) at 25-26.) He never contacted Officer Moreno or "looked into it after that;" he "assumed it was done." (*Id*. at 26, 28.)

Pena's state probation officer had the same conversation with him about early termination of probation and she followed through and did the paperwork to terminate his probation after a year. (*Id*. at 27.) His state probation officer told him that he was one of her "easiest clients" that she had to work with because she never had to go chasing after him. (*Id*.) Pena's state probation officer told him that if she contacts him then he is not off probation. (*Id*. at 26.) He did not realize that he was off state probation until he got the minute entry. (Hrg. Tr. 2/3/25 (Doc. 77) at 26.) Pena was "on probation a couple times" and never got any paperwork advising him that he was off probation. (Id. at 27.)

Pena thought he was off probation when he got a new cell phone and cell phone number in May 2024. (Id. at 27-28.) He did not have a phone for a while because it had been stolen. (Id. at 30.) As a result, he "couldn't get in touch with a lot of people." (*Id*.) He used his partner's phone until he got a new one. (*Id*.)

Similarly, when he moved out of his sister's house in late June 2024 or early July 2024, he thought he was off federal probation. (*Id*. at 27.) His sister was not going to be living at the house because she either lost or sold the house. (*Id*.) He moved into a weekly hotel with his partner. (Hrg. Tr. 2/3/25 (Doc. 77) at 28.) He was working and remained sober. (*Id*. at 29.) He received some mail at his sister's house for a month or two, but he "ended up forwarding it" because he was not getting his mail. (*Id*. at 30-31.) He had an argument with his sister and they "didn't really talk after that." (*Id*. at 31.)

Pena learned that he was still on probation when he was arrested in late November 2024. (*Id*. at 30.) If Officer Moreno had contacted him during "those six months," he would "have reached back out to him." (Hrg. Tr. 2/3/25 (Doc. 77) at 30.) His sister never told him that Officer Moreno was looking for him; he never communicated with her after their argument. (*Id*.) He never received any messages from Officer Moreno. (*Id*.) He did not have a phone for a long period of time and his email was linked to that phone. (*Id*. at 31-32.) He also did not get back into his Facebook account. (*Id*.)

### 2. Cross-examination

In 2012, Pena "got 18 months probation for a drug case in Pima County" and in 2013 he "got two years probation on a forgery case[.]" (Hrg. Tr. 2/3/25 (Doc. 77) at 33.) He was also on state probation for a period of time while on federal probation. (*Id*. at 33-34.)

In the federal case, the sentencing judge, Pena's attorney, and Officer Moreno all went over the conditions of probation. (*Id*. at 34.) He signed the J&C after going over the conditions with Officer Moreno. (*Id*.) Pena feels that he had a good relationship with Officer Moreno. (*Id*.)

Pena never got any paperwork advising him that he was off federal probation; the same was true when he was taken off state probation. (Hrg. Tr. 2/3/25 (Doc. 77) at 35.) He did not call Officer Moreno and confirm that he was off probation. (*Id*.) He sent Officer Moreno a couple text messages, but he did not respond. (*Id*.) Officer Moreno had told him that he "would be off probation and it would take about a couple weeks to finalize the paperwork." (*Id*.) Pena did not know that Officer Moreno was trying to contact him, so he did not contact Officer Moreno. (*Id*.)

## II. DISCUSSION

"[T]he government bears the burden to demonstrate that a defendant has violated a condition" of his supervision." *United States v. Weber*, 451 F.3d 552, 559 n. 9 (9th Cir.2006). "[T]he district court need only conclude that a preponderance of the evidence supports" revocation." *United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir.1996). While the burden is only a preponderance of the evidence (and not beyond a reasonable doubt), to prove the violation there must still be credible evidence the defendant violated the terms of supervision. *United States v. Perez*, 526 F.3d 543, 547 (9th Cir.2008). As discussed below, the Court finds that the government has met its burden.

The defendant concedes that he left his approved residence without prior approval from Officer Moreno and did not thereafter notify Officer Moreno of the change in residence. The defendant's argument is that could not have knowingly violated Standard Condition #5 because he honestly believed that he was no longer on probation.

- 6 -

The defendant's recollection of the discussion of early termination obviously conflicts with Officer Moreno's recollection. However, Officer Moreno has been a federal probation officer for 25 years, and unlike the defendant, is well versed in the early termination process for federal probation. Officer Moreno made clear that he does not tell defendants, and did not tell Pena, that probation has been terminated until it is a done deal, meaning that the district judge approves the request for early termination.

Pena did not contact Officer Moreno to confirm that his probation had been terminated at any point, let alone prior to changing his residence. Even though he got a new phone, the defendant either knew or could have obtained Officer Moreno's phone number. He also could have gone to the probation office in Tucson or Phoenix to inquire about his status on probation. Simply put, the onus was on the defendant to verify whether he was still on probation and not simply assume that his probation had been terminated.

The defendant's experience with the termination of his state probationary terms is not relevant to the case at hand because there was no testimony about the state process for early termination of probation. Moreover, even if the state process was relevant, Pena testified that when one of his terms of probation was terminated early, he received notification by a minute entry. That fact undercuts the notion that it was reasonable to conclude that his federal probation had been terminated because Officer Moreno did not get in touch with him.

### III. RECOMMENDATION

For the reasons discussed above, the Court recommends that the District Court find that the government has proven by a preponderance of the evidence that the defendant violated Standard Condition #5 by failing to notify his probation officer of his change in residence.

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR 20-01909-TUC-JCH**.

- 7 -

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 10th day of February, 2025.

*Eric J. Markovich*
Eric J. Markovich
United States Magistrate Judge